IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **VICTORY SHIPPING PTE. LTD.,** § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> **50,109 METRIC TONS OF CEMENT,** § <br> *in rem*, and **TEXCEM LLC,** *in personam* § <br> *Defendant* § <br> § | C.A. No. 4:22-cv-3689 <br><br> IN ADMIRALTY, Rule 9(h) |

## PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT

Plaintiff, Victory Shipping Pte. Ltd. ("Victory Shipping"), by its attorneys ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P., expressly subject to all rights to arbitration, as and for its Verified Original Complaint against the *in rem* Defendant 50,109 Metric Tons of Cement (sometimes hereinafter the "Cargo") and *in personam* Defendant Texcem LLC ("Texcem") alleges as follows upon information and belief:

### I.
### JURISDICTION AND VENUE

1. This is an admiralty and maritime claim within the Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. It also arises under Rules B and C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure. Federal jurisdiction also exists because this action arises under the New York Convention on Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. § 208 and the Federal Arbitration Act, 9 U.S.C. § 8.

2. Venue is proper in this Court under 28 U.S.C. § 1391 in that the Cargo is present within the District and jurisdiction of this Honorable Court and a substantial part of the events or omissions given rise to the claim occurred in this judicial district.

## II.
## PARTIES

3. At all material times hereto, Plaintiff Victory Shipping was and still is a corporation organized under the laws of a foreign nation with an office and place of business located at 300 Beach Road, #25-05 The Concourse, 199555 Singapore, and was the time-chartered owner of the M/V TOMINI FELICITY.

4. At all material times hereto, *in personam* Defendant Texcem was and still is limited liability company organized under the laws of Oklahoma who can be served through Zachry Weir, its registered agent at 2010 Valley View Lane, Suite 300, Farmers Branch, Texas 75234, and was the voyage charterer of the M/V TOMINI FELICITY (the "Vessel") and the owner of the Cargo.

5. At all material times, *in rem* Defendant the Cargo was loaded aboard the Vessel at Karachi, Pakistan and transported to Houston, Texas, where it was discharged at various berths from August 1, 2022 through October 3, 2022. Upon information and belief, the Cargo is owned by Texcem and is presently located at 15135 Jacintoport Blvd., Houston, Texas 77015.

## III.
## CHARTER

6. On or about June 6, 2022, Victory Shipping, as time charterer of the Vessel, entered into a voyage charter (the "C/P") with Texcem for carriage of the Cargo from Karachi, Pakistan to Houston, Texas. The C/P is comprised of the fixture recap email dated June 6, 2022 and the GENCON 1994 voyage charter proforma. True and correct copies of the fixture recap and the GENCON proforma are annexed as **Exhibits A and B**, respectively.

7. Clause § 8 of the GENCON 94 charter, which was unamended by the fixture recap, provides the Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, demurrage, claims for damages and for all other amounts due under this C/P including costs of recovering same." *See* **Exhibit B, Part II, § 8**.

8. Further, relevant terms of the fixture recap (**Exhibit A**) include:

   Disch : Houston, 1 SB AAAA. Care terminal, (Max draft 39') (p. 3 of 8)

   5) DISCHARGE PORT: 1 SAFE PORT /1 SAFE BERTH HOUSTON TX, USA. (Maxm draft 39') (p. 5 of 8)

   6) LOAD RATE: 5000 MTS PWWD SHINC (5000 metric tons Per Weather working day, Sundays and Holidays included) (p. 5 of 8)

   7) DISCH RATE: 9000 MT PWWD SHINC (MAXM DRAFT 39') (p. 5 of 8)

   8) FREIGHT RATE: USD 69 $ PMT FIOST, BSS 1/1(Free In and Out Stowed and Trimmed, Basis 1 Port to 1 Port) (p. 5 of 8)

   9) … BALANCE FREIGHT 5% PLUS UNDISPUTED DEMM OR DISPATCH WILL BE PAID WITHIN 7 BANKING DAYS TO OWNERS NOMINATED BANK AFTER COMPLETION OF DISCHARGING OPERATIONS AND SUBMISSION OF OWNERS LAYTIME CALCULATIONS SUPPORTED BY NOR AND SOF SIGNED BY MASTER/AGENT/SHIPPERS/AND RECEIVERS. … (p. 5 of 8)

   11) LAYTIME USED AT LOADING / DISCHARGING PORTS SHALL CEASE TO COUNT IMMEDIATELY ON COMPLETION OF LOADING / DISCHARGING IN EACH PORT - UNLESS VSL IS PREVENTED FROM SAILING DUE TO ANY CARGO/CHARTERER RELATED MATTER.

       LAYTIME COMMENCEMENT: AT LOAD PORT, TIME TO COUNT 12HRS AFTER TENDERING NOR, UNLESS SOONER COMMENCE IF USED ACTUAL TIME USED TO COUNT, FRIDAYS, HOLIDAYS INCLUDED. AT DISCHARGE PORTS, TIME TO COUNT 12 HRS AFTER TENDERING NOR, SUNDAYS, HOLIDAYS INCLUDED UNLESS SOONER COMMENCED IF USED ACTUAL TIME USED TO COUNT. NOR TENDER ATDNFSHINC WWWW. NOR SHOULD BE TENDERED WITHIN LAYCAN. (p. 6 of 8)

   12) DEMMURAGE: USD 36.000 PDPR / HD WTS BENDS. (p. 6 of 8)

   13) SHIFTING BETWEEN BERTHS TO BE ON CHRT'S TIME AND EXPENSE, ANY ADDITIONAL SHIFTING EXPENSES TO BE FOR THE PARTY ORDERING IT, IF ORDERED BY SHIPPERS OR RCVRS THEN SAME TO BE FOR CHARS ACCT. (p. 6 of 8)

15) NOR AT LOADING PORT TO BE TENDERED MON TO FRI 0900 – 1700 HRS AND SAT 0900 – 1300 HRS. BY MASTER THROUGH EMAIL/TELEX/FAX. AND THEN LAYTIME BEGIN TO BE CALCULATED AFTER 12HRS AFTER NOR TENDERED UNLESS SOONER COMMENCED IN WHICH CASE ACTUAL TIME USED TO COUNT.

NOR AT DISCHARGING PORT UPON VSL ARRIVAL AT ANY TIME DAY AND NIGHT BY MASTER THROUGH EMAIL/TELEX/FAX. AND THEN LAYTIME BEGIN TO BE CALCULATED AFTER 12HRS AFTER NOR TENDERED ATDNSHINC, UNLESS SOONER COMMENCED IN WHICH CASE ACTUAL TIME USED TO COUNT. LAYTIME COMPLETE CALCULATION AFTERLOADING/DISCHARGING OWNERS TO GIVE APPROX 7/5/3/ AND 2 DAYS AND FINAL 24 HOURS DEFINITIVE NOTICE OF ARRIVAL BENDS TO SHPRS/CHRTRS VIA CHARTS NOMINATED AGENT. (p. 6 of 8)

24) LIGHTENING/LIGHTERAGE, IF ANY, TO BE FOR CHARTERERS ACCOUNT AND ARRANGEMENT AT BENDS. IF DOUBLE BANKING IS REQUIRED THEN BIMCO RELEVANT CLAUSE TO APPLY. (p. 7 of 8)

25) ALL DISPUTES WILL BE SOLVED AMICABLY, OTHERWISE GA/ARBI. IF ANY ARBITRATION AND GENERAL AVERAGE TO BE SETTLED IN LONDON IN ACCORDANCE WITH THE ENGLISH LAW, UNLESS THE PARTIES AGREE UPON A SOLE ARBITRATOR, ONE ARBITRATOR SHALL BE APPOINTED BY EACH PARTY. IF THE TWO ARBITRATORS SO APPOINTED ARE IN AGREEMENT THEIR DECISION SHALL BE FINAL. IN ALL OTHER CASES THE ARBITRATORS SO APPOINTED SHALL APPOINT A THIRD ARBITRATOR AND THE REFERENCE SHALL BE TO THE THREE-MAN TRIBUNAL THUS CONSTITUTED. ANY CLAIMS UPTO US$ 50.000, TO BE SETTLED IN LONDON UNDER THE L.M.A.A. (p. 7 of 8)

29) SLIGHT STEVEDORE DAMAGE IF ANY AT LOADING /DISCHARGE PORT IS TO BE SETTLED BETWEEN STEVEDORE AND OWNERS DIRECTLY. NOTICE OF SUCH DAMAGE SHALL BE GIVEN BY MASTER AND RECEIVED BY STEVEDORE/AGENT WITHIN 24 HOURS OF OCCURRENCE OF DAMAGE OR LATEST PRIOR SAILING OF THE VESSEL. CHTRS SHALL RENDER DUE ASSISTANCE TO HELP ACHIEVING AMICABLE SETTLEMENT OF SUCH CLAIM BETWEEN OWNERS AND STEVEDORE WITH LIABILITY. ANY DAMAGE WHICH MAY AFFECT VSLS SAFETY A/O SEAWORTHINESS SHALL BE REPAIRED TO MEET OWRS

       PNI'S CLASS SURVERYORS SATISFACTION BEFORE VSLS SAILING, TIME/COST CAUSED THEREFORE TO BE FOR CHTRS ACCT.  (p. 8 of 8)

30) ONCE ON DEMURRAGE, ALWAYS ON DEMURRAGE.  (p. 8 of 8)

31) OTHER TERMS AS PER GENCON C/P 94 WITH LOGICAL AMENDMENTS/ALTERATIONS WITH 1,25% COMMISSION ON F/D/D TO BE PAID BY OWNERS TO OCEANUS CARGO CARRIERS USA PLUS 1,25% COMMSSION ON F/D/D TO BE PAID BY OWNERS TO ICSHIPBROKERS APS DENMARK WITH ALL SUBS LIFTED.  (p. 8 of 8)

## IV.
### BILL OF LADING

9. After the Cargo was loaded, the Vessel issued an onboard CONGENBILL Bill of Lading No. 1, dated June 21, 2022 for the transportation of the Cargo from Karachi, Pakistan to Houston, Texas. The Bill of Lading identifies Texcem LLC as the Consignee and Notify Party. *See* **Exhibit D**, a true and correct copy of which is annexed.  The terms and conditions of the GENCON Voyage Charter Party were incorporated into the Bill of Lading.

## V.
### FACTS

10. The Vessel arrived at the Port of Karachi on June 13, 2022 and tendered Notice of Readiness to load the Cargo.  Cargo operations were completed on June 21, 2022.  Under the C/P, Texcem was allowed 10.02 days to load, only used 7.75 days and thus earned dispatch[1] of $40,950 (*see* Laytime Calculation at Karachi, a true and correct of which is annexed as **Exhibit C**).  Upon completion of loading on or about June 21, 2022, the Vessel issued an onboard Bill of Lading "TO THE ORDER M/S TEXCEM LLC" for the Cargo for delivery at Houston, Texas (*See* **Exhibit D**).

11. Voyage Charterer and Consignee Texcem directed the Vessel to proceed to Care Terminal, Houston, Texas for discharge (**Exhibit A § 5**).  The Vessel departed Karachi, Pakistan

---

[1]  Dispatch is the amount payable to Texcem for loading in less than the time allowed.

on June 21, 2022, and, as is customary, tendered its Notice of Readiness upon arrival at anchorage off the coast of Houston, Texas on July 31, 2022. The Vessel's movements in and around Houston are all fully detailed in the Trinity Shipping Statement of Facts. A true and correct copy of **Exhibit E** is annexed hereto and fully incorporated by reference.

12. Specifically, on charterer Texcem's orders, the Vessel arrived at Care Terminal on August 1, 2022 and began discharging cargo. **Exhibit E** at 1. Thereafter, on August 4, 2022, again on Texcem's orders, the Vessel shifted to Jacintoport Terminal to continue discharging. *Id.* at 4. Apparently, charterer Texcem then decided to choose another discharge berth, eventually settling on Houston Peninsula Terminal. However, this third discharge berth designated by Texcem can only accommodate vessels with 30 feet of draft or less.

13. As such, on August 10, 2022, the Vessel departed Jacintoport Terminal and returned to the Galveston anchorage on orders from Texcem due to Texcem being unable to secure a suitable berth. Thereafter, the Vessel remained at anchorage, where she awaited further instructions from charterer Texcem. *Id.* at 8. The Vessel remained offshore from August 11th through September 4th, a total of 25 days.

14. On September 5, 2022, Texcem ordered the Vessel to return to Houston and berth at the Port of Houston City Dock 32 to continue discharging. *Id.* at 9. Similarly, discharge at City Dock 32 was slow and well below the contracted rate of discharge of 9,000 metric tons per day.

15. On September 25, 2021, the Vessel shifted from City Dock 32 back to Care Terminal. However, no additional cargo was discharged at Care Terminal. Rather, on September 27, 2022, again on Texcem's order, the Vessel Shifted to Houston Peninsula Terminal where the vessel discharged from September 28th through October 2nd. The stevedores completed sweeping of the holds and thus completed all cargo operations at 2055 hours on October 3rd. The Vessel departed the berth at 2130 hours on October 3, 2022. *Id.* at 18.

16. Charterer Texcem moved the Vessel for their own reasons from Care Terminal, the berth nominated under the C/P, to various other berths for discharge. Apparently, the Vessel was required to shift to different berths to unload enough of the Cargo to bring the Vessel's draft down below 30 feet of draft, which was the maximum draft at Houston Peninsula Terminal. Moreover, the Cargo discharge rate was significantly below the 9,000 metric tons per day warranted in the fixture recap (**Exhibit A § 7**). Further, and compounding the delays, the Vessel only discharged cargo intermittently from August 1st to August 8th and thereafter was ordered by charterers to the anchorage late on August 10th, where the Vessel remained for 25 days.

17. By email of October 5, 2022, Victory Shipping provided Texcem with the Final Freight Invoice with supporting documents as per the C/P, including owner's laytime calculations supported by NOR (Notice of Readiness), and a SOF (Statement of Facts) signed by the Master and Receiver's agent, Trinity Shipping. Further, under cover of this same email, Victory Shipping provided Texcem with its Debit Notice for additional PDA and other costs incurred due to Texcem's breach of C/P as well as the costs of the stevedore damage claim. A true and correct copy of the October 5, 2022 email and attachments is annexed as **Exhibit F**.

18. Victory Shipping has continuously provided its laytime calculations to Texcem throughout the Vessel's call at Houston and Texcem have not objected to any of the laytime calculations. from which the amount of demurrage is derived. Further, the Statement of Facts was signed by Trinity Shipping as agent of Texcem, LLC. *See* **Exhibit E**.

19. The breakdown in outstanding charges is summarized and set forth in the Statement of Account dated October 5, 2022. A true and correct copy of this Statement of Account is attached hereto as **Exhibit G**.

| Description | Amount |
|---|---|
| Freight – 50,109 MT x $69 | $3,457,521.00 |
| Demurrage[2] at Houston, Texas | $2,072,025.00 |
| Despatch at Karachi, Pakistan | ($40,950.00) |
| PNI Surveyor Charges at Load port Karachi | $6,486.81 |
| PDA Charges | $241,407.00 |
| Stevedore Damage | $50,397.78 |
| Partial Freight Payment Received on June 9, 2022 | ($1,035,000.00) |
| Partial Freight Payment Received on June 21, 2022 | ($2,242,500.00) |
| Partial Freight Payment Received on August 25, 2022 | ($172,876.05) |
| Partial Payment Received on September 23, 2022 | ($220,000.00) |
| **Total Due** | **$2,116,511.54** |

20. Pursuant to the fixture recap:

BALANCE FREIGHT 5% PLUS UNDISPUTED DEMM (demurrage) OR DISPATCH WILL BE PAID WITHIN **7** BANKING DAYS TO OWNERS NOMINATED BANK AFTER COMPLETION OF DISCHARGING OPERATIONS AND SUBMISSION OF OWNERS LAYTIME CALCULATIONS SUPPORTED BY NOR AND SOF SIGNED BY MASTER / AGENT / SHIPPERS/ AND RECEIVERS

*See* **Exhibit A at 5 § 9**.

21. The discharge operations were completed on October 3, 2022; Victory Shipping provided Texcem with its laytime calculations supported by NOR and SOF signed by the Master/Agent on October 5, 2022; Texcem has never disputed any of the laytime calculations provided to it by Victory Shipping; and seven (7) banking days after October 5, 2002 is October 17, 2022. Therefore, the outstanding demurrage was due and payable by Texcem to Victory Shipping on or before Monday, October 17, 2022

---

[2] Demurrage is the amount paid by the charterer for failing to complete loading or discharging within the time allowed in the charter party. Under the C/P, Texcem had 5.567 days to discharge and took 63.124 days. Pursuant to the Fixture, demurrage accrues at a rate of $36,000 per day – 57.556 days at $36,000 per day = $2,072,025.00. *See* **Exhibit A** at 7 § 12. The Fixture also provides that "once on demurrage, always on demurrage" meaning that once Texcem has exhausted its laytime, the demurrage will begin to accrue and continue to accrue without interruption. *Id.* at 8 § 30.

## VI.
## BREACH OF CHARTER PARTY AND BILL OF LADING CONTRACTS

22. Victory Shipping repeats and realleges each and every allegation set forth in Paragraphs 1 through 21 of this Verified Original Complaint as if set forth herein at length.

23. Texcem breached the C/P and the Bill of Lading by directing the Vessel to no fewer than five (5) berths in contravention of the fixture recap: "Disch: Houston, 1 SB AAAA. Care terminal, (Max draft 39')" and Clause 5 "DISCHARGE PORT: 1 SAFE PORT /1 SAFE BERTH HOUSTON TX, USA. (Maxm draft 39')"  (**Exhibit A, p. 3 of 8 and p. 5 of 8**).

24. As a consequence of this breach, the Vessel incurred additional port disbursements in the amount of $241,407.00, as nearly as can be presently ascertained.

25. As per the terms of the C/P and Bill of Lading, in addition to freight, Texcem was required to pay additional PDA (Port Disbursement Account) charges (as a result of the multiple berths and length of discharge) (**Exhibit A, Clause 13**), stevedore damages (**Exhibit A, Clause 29**), and demurrage (**Exhibit A at 5 § 9**), all in the amount of $2,116,511.54.

26. Despite due demand and repeated requests by Victory Shipping, Texcem has failed to remit the $2,116,511.54, now due and owing under the C/P and Bill of Lading.

27. As of the filing of this Complaint, the Cargo has been fully discharged from the Vessel and conditionally delivered to Texcem, who has trucked the Cargo to a yard located at 15135 Jacintoport Blvd., Houston, Texas 77015.

28. Clause § 8 of the GENCON 94 charter, which was unamended by the fixture recap and incorporated into the Bill of Lading, provides the Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, <u>demurrage</u>, claims for damages <u>and for all other amounts due under this C/P</u> including costs of recovering same." (emphasis added)  See **Exhibit B, Part II, § 8**.

29. Victory Shipping now seeks to arrest the Cargo pursuant to Rule C in order to perfect its maritime lien, and attach the Cargo pursuant to Rule B, for unpaid demurrage and for "all other amounts due under the C/P," namely, additional port disbursements and stevedore damages. *See* **Exhibit B, Part II, § 8; Exhibit A, Clauses 13 and 29**, before staying the matter in favor of London Arbitration.

## VII.
## RULE C ALLEGATIONS

30. Victory Shipping repeats and realleges each and every allegation set forth in Paragraphs 1 through 29 of this Verified Original Complaint as if set forth herein at length.

31. Victory Shipping has performed all of the duties and obligations Victory owed to Texcem under the C/P and Bill of Lading and is entitled to the sums set forth above. Victory Shipping has a lien against the Cargo for unpaid demurrage, additional port disbursements, and stevedore damages in the amount of $2,116,511.54 under the C/P and Bill of Lading. (**Exhibit B, Part II, § 8 and Exhibit D**)

32. Interest, costs, and attorney's fees are routinely awarded to the prevailing party in arbitrations held pursuant to English law. As best as can be presently estimated, Plaintiff expects to incur attorney's fees and costs in the arbitration of $200,000.00.

33. Victory Shipping's maritime lien meets the conditions for action *in rem* against the Cargo which subjects the Cargo to seizure and sale under Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure.

## VIII.
## RULE B ALLEGATIONS

34. Victory Shipping repeats and realleges each and every allegation set forth in Paragraphs 1 through 33 of this Verified Original Complaint as if set forth herein at length.

35. The requirements of Rule B are met. First, Victory Shipping has a valid maritime claim against Texcem, *i.e.*, a claim for breach of the aforementioned C/P and Bill of Lading. The C/P and Bill of Lading are maritime contracts because the services provided thereunder primarily relate to the carriage of goods by water.

36. Second, Texcem cannot be found within the Southern District of Texas.

37. Third, upon information and belief, Texcem has property located within the District. Presently, there are goods, i.e., the Cargo, owned by Texcem, located at 15135 Jacintoport Blvd., Houston, Texas 77015.

38. Fourth, there is no statutory bar to recovery.

39. Interest, costs, and attorney's fees are routinely awarded to the prevailing party in arbitrations held pursuant to English law. As best as can be presently estimated, Plaintiff expects to incur attorney's fees and costs in the arbitration of $200,000.00.

40. Accordingly, Victory Shipping seeks to obtain jurisdiction over Texcem through attachment of Texcem's property within this District pursuant to the process of maritime attachment and garnishment to be issued against such property pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and in order to secure its claim for breach of the aforementioned C/P.

41. The Defendant Texcem cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions but, upon information and belief, Defendant Texcem has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, namely a cargo of 50,109 Metric Tons of Cement located at 15135 Jacintoport Blvd., Houston, Texas 77015.

42. Plaintiff Victory Shipping seeks an Order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions attaching any assets of the Defendant within this District up to the amount of $2,316,511.54 for the purpose of obtaining personal jurisdiction over the Defendant Texcem and to secure the Plaintiff's claims as described above.

## IX.
### ARBITRATION

43. Clause 19 of the C/P between Plaintiff Victory Shipping and Defendant Texcem, LLC, incorporated into the Bill of Lading, contains an arbitration provision which provides for London Arbitration of all disputes and the application of English law. **Exhibit B** at 4 § 19.

44. Under 9 U.S.C. § 208, the provisions of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, apply to actions brought under Chapter 2, 9 U.S.C. § 201, *et seq.*, the "New York Convention" to the extent that the FAA is not in conflict with the New York Convention. There is no conflict between 9 U.S.C. § 8 and the New York Convention. Under 9 U.S.C. § 8, a proceeding may be begun by an arrest of attachment "according to admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award."

45. Plaintiff Victory Shipping seeks to commence arbitration under the terms of the C/P and Bill of Lading, pursuant to 9 U.S.C. § 8, by the attachment of the Cargo according to the usual course of admiralty proceedings and to obtain security in and of such arbitration for its entire claim, plus interest, costs, and attorney's fees.

46. Plaintiff Victory Shipping also specifically reserves all other rights and remedies contained in the C/P and Bill of Lading, none of which are waived.

47. Interest, costs, and attorney's fees are routinely awarded to the prevailing party in arbitrations held pursuant to English law. As best as can be presently estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

| | | | |
|---|---|---|---|
| (A) | Demurrage | | $2,072,025.00 |
| (B) | Extra PDA | $ | 241,407.00 |
| (C) | Stevedore damage claim | $ | 50,397.78 |
| (D) | Balance of freight | $ | 7,144.95 |
| (E) | Karachi PNI surveyor charges | $ | 6,486.81 |
| (F) | Less Load Port Dispatch | ($ | 40,950.00) |
| (G) | Partial payment | ($ | 220,000.00) |
| | Subtotal | | $2,116,511.54 |
| | Attorney's fees and Arbitration costs | | $ 200,000.00 |
| | Total | | $2,316,511.54 |

48. After the attachment of the Cargo and any other of Texcem's goods and chattels, credits and effects in the District pursuant to the Process of Maritime Attachment and Garnishment and the sale of the attached property under the direction of this Court and the deposit of the sale proceeds into the registry of the Court, Plaintiff Victory Shipping requests, pursuant to 9 U.S.C. § 208 and 9 U.S.C. § 8, that this action be stayed in favor of arbitration in London under the C/P and Bill of Lading, with this Honorable Court retaining jurisdiction to enforce any subsequent award issued in the arbitration against such property or sale proceeds.

## X.
### INDEMNITY IN FAVOR OF U.S. MARSHAL

49. Victory Shipping agrees to hold harmless and indemnify the U.S. Marshal and all of its deputies arising from any and all liability as a result of arresting and/or attaching the Cargo.

## XI.
### CONDITIONS PRECEDENT

50. All conditions precedent have been satisfied and/or discharged.

51. All and singular, the premises of this Verified Original Complaint are true and correct and within the admiralty and maritime jurisdiction of the United States and of this Honorable Court.

## XII.
### PRAYER

**WHEREFORE**, Victory Shipping prays:

A. That process in due form of law issue against *in personam* Defendant Texcem, citing it to appear and answer under oath all and singular the matters alleged in the Verified Original Complaint;

B. That process *in rem*, pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, issue against the Cargo, placing the Cargo under arrest and under the custody of the U.S. Marshal or a substitute custodian (as may be ordered by the Court);

C. That process in due form of law according to the practice of this Court issue against Texcem, or any other entity or person claiming an interest in the Cargo, citing it to appear and answer the foregoing, failing which a default may be taken;

D. That Victory Shipping's lien be declared a valid lien on the whole of the Cargo, and that said maritime lien be declared superior in right and interest to any claim thereon or therein by any other person or entity;

E. That the Cargo be condemned and sold free and clear of all liens and encumbrances and that the proceeds of said sale be directed to be placed in the Registry of the Court, and security for Victory Shipping's claims as best can currently be estimated in the amount of $2,316,511.54;

F. Since Defendant Texcem cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, this Court issue an Order directing the Clerk of the Court to issue process of maritime attachment and garnishment all property of Texcem within this District, including, but not limited to, the Cargo located at 15135 Jacintoport Blvd, Houston, Texas 77015 in the amount of $2,316,511.54, together with attorney's fees, costs, expenses, and interest.

G. That upon arrest and/or attachment of the Cargo this Court retain jurisdiction over the matter through the London Arbitration, and the confirmation of the arbitration award as a judgment of this Court, including any appeals thereof, and for any further or supplemental proceedings as may be necessary; and

H. That Victory Shipping be awarded such other, further and different relief as the Court deems just and proper.

Respectfully submitted,

By: */s/ Kevin P. Walters*
    Kevin P. Walters
    Texas State Bar No. 20818000
    Federal I.D. No. 5649
    Blake E. Bachtel
    Texas State Bar No. 24116055
    Federal I.D. No. 3479533
    ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP
    1600 Smith Street, Suite 5000
    Houston, Texas 77002-7380
    Telephone: (713) 224-8380
    Facsimile:  (713) 225-9545
    kevin.walters@roystonlaw.com

**ATTORNEY FOR PLAINTIFF**
**VICTORY SHIPPING PTE. LTD.**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VICTORY SHIPPING PTE. LTD., *Plaintiff*, | § § § | |
| v. | § § | C.A. No. _____ |
| 50,109 METRIC TONS OF CEMENT, *in rem*, and TEXCEM LLC, *in personam* *Defendant* | § § § § | IN ADMIRALTY, Rule 9(h) |

### VERIFICATION

STATE OF TEXAS          §
                                    §
COUNTY OF HARRIS   §

BEFORE ME, the undersigned authority, on this day personally appeared Kevin P. Walters, who being duly sworn, deposed and stated as follows:

"I am an attorney for Plaintiff Victory Shipping Pte. Ltd. in connection with the referenced matter. I have read the foregoing Verified Original Complaint and know the contents thereof, and that the same are true to the best of my knowledge, information and belief, based upon documentation and information provided to me by Plaintiff. The reason that I make this verification instead of Plaintiff is that Plaintiff does not have officers or directors within this District."

_____
Kevin P. Walters

SUBSCRIBED AND SWORN to before me on the 21st day of October, 2022.

SYLVIA L COOPER
Notary ID #2652944
My Commission Expires
January 4, 2024

_____
Notary Public in and for the
State of Texas

65718:46639666