Case 4:22-cv-03689   Document 28   Filed on 11/21/22 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
November 21, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| VICTORY SHIPPING PTE. LTD., | § § § | |
| Plaintiff. | § § | |
| V. | § § | CIVIL ACTION NO. 4:22-cv-03689 |
| 50,109 METRIC TONS OF CEMENT, *in rem*, et al., | § § § § | |
| Defendants. | § § | |

## ORDER AND OPINION[1]

Pending before me is Defendant Texcem LLC's Motion for Vacatur. *See* Dkt. 21. Plaintiff Victory Shipping Pte. Ltd. ("Victory Shipping") responded with a Brief in Support of Attachment and Arrest. *See* Dkt. 22. The parties came before me for a Rule E(4)(f) hearing on November 8, 2022. *See* FED. R. CIV. P. SUPP. ADM. R. E(4)(f). Following the hearing, I requested supplemental briefing on the following four questions:

(1) What law applies to determine whether Victory Shipping's alleged maritime lien against the Cargo is valid.

(2) Depending on the answer to (1), whether and to what extent (in dollars) Victory Shipping's alleged maritime lien against the Cargo is valid.

(3) Whether equitable vacatur is available in an action commenced pursuant to 9 U.S.C. §§ 8, 208.

(4) Assuming that equitable vacatur is available in an action commenced pursuant to 9 U.S.C. §§ 8, 208, whether the court retains "jurisdiction to direct the parties to proceed with the arbitration," 9 U.S.C. § 8, if the attachment is vacated.

---

[1] A motion to vacate a maritime attachment is ordinarily treated as a nondispositive matter appropriately decided by a magistrate judge. *See K Inv., Inc. v. B-Gas Ltd.*, No. 3:21-CV-00016, 2021 WL 3477356, at *5 n.1 (S.D. Tex. June 4, 2021).

Dkt. 25 at 1. Each side provided its respective answers. *See* Dkts. 26, 27. Having reviewed the motion, the response, the supplemental briefing, and the applicable law, and having considered the parties' arguments at the Rule E(4)(f) hearing, I find that the Motion for Vacatur should be **GRANTED**.

## BACKGROUND

On or about June 6, 2022, Victory Shipping and Texcem LLC ("Texcem") entered into a charter party for the shipment of 50,109 metric tons of cement ("the Cargo") from Karachi, Pakistan, to Houston, Texas. Importantly, the charter party provides that any disputes are to be resolved amicably, or through arbitration in London under English law. Discharge of the Cargo in Houston was completed on October 3, 2022. Though the voyage from Karachi to Houston was uneventful, discharge of the cargo in Houston took 63 days instead of the six days warranted in the charter party. The delay in offloading alone resulted in $2,072,025.00 in demurrage.

On October 25, 2022, Victory Shipping filed a Verified Complaint and moved, pursuant to 9 U.S.C. § 8 ("Federal Arbitration Act") and Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, to begin a proceeding against Texcem and attach the Cargo as security against Victory Shipping's alleged maritime lien in the amount of $2,326,511.54. In addition to demurrage, this amount includes $241,407.00 in port disbursement account charges, $50,397.78 in stevedore damage, $7,144.95 for the balance of freight, and $6,486.81 for Karachi PNI surveyor charges. The amount has been reduced by a $40,950.00 credit for Texcem loading the Cargo in less than the allotted time, and a $220,000.00 partial payment. I issued an Order Authorizing the Issuance of Process of Maritime Attachment and Garnishment of the Cargo on October 27, 2022. *See* Dkt. 10. On November 4, 2022, Texcem moved to vacate the attachment pursuant to Rule E(4)(f).

In its Motion for Vacatur, Texcem highlights that "the terms of the proposed voyage . . . w[ere] never fully accepted by TEXCEM and a contract was never

executed"; that the governing documents produced by Victory Shipping "do not contain a signature by TEXCEM or any TEXCEM employee"; and that Victory Shipping "cannot demonstrate a written agreement to the demurrage that they seek." Dkt. 21 at 3 & n.5, 5. Yet despite these contentions, Texcem seeks vacatur purely on equitable grounds and conceded at the hearing that all the elements of Rules B and E were met. Nevertheless, because the attachment is the basis of this Court's subject matter jurisdiction, I have an independent obligation to assure myself that the attachment complies with the requirements of Rules B and E. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").

## ANALYSIS

A "district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006), *abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). The requirements are: 1) "a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Id*. Texcem concedes that Victory Shipping has carried its burden and seeks vacatur solely on equitable grounds. For my own analysis though, I am not convinced that Victory Shipping has carried its burden as to the first element—a valid maritime lien.

Counsel for Victory Shipping was commendably candid during the hearing and conceded that, under English law—the law that Victory Shipping contends governs the dispute—it likely would not have a valid maritime lien. I asked Texcem's counsel whether he agreed that this dispute was required to be arbitrated in London, but I did not receive a straight answer. Given Victory Shipping's concession and Texcem's caginess as to whether it was bound to submit to London

3

arbitration, I asked the parties to provide supplemental briefing regarding what law governs the question of whether Victory Shipping's alleged maritime lien against the Cargo is valid.

Texcem begins its supplemental briefing by reiterating that "there is no fully executed agreement binding TEXCEM to all of the C/P's terms." Dkt. 26 at 1. Texcem asserts that "U.S. maritime law . . . applies because Rule B attachment and Rule C arrests are procedural remedies." *Id.* at 2. In support, Texcem cites *Kulberg Finances Inc. v. Spark Trading D.M.C.C.*, 628 F. Supp. 2d 510 (S.D.N.Y. 2009). Yet the portion of *Kulberg* that Texcem cites concerns what law applies to determine whether the court has admiralty *jurisdiction*, not whether a lien is valid. *See id.* at 516 ("Consequently, we apply American maritime law in determining the existence of admiralty jurisdiction."). In fact, the second half of the *Kulberg* opinion determines the validity of the maritime claim at issue by looking to English law. *See id.* at 519 ("Kulberg has failed to meet its burden of establishing the existence of a valid prima facie admiralty claim under English law. Consequently, the Rule B attachment must be vacated."). Oddly, Texcem focuses its response to the second question—whether and to what extent Victory Shipping's alleged maritime lien against the Cargo is valid—on addressing the outcome should it be wrong and English law applies instead of U.S. law. Texcem does offer this three-sentence paragraph regarding the validity of Victory Shipping's alleged maritime lien under U.S. law:

> Under U.S. law, it is settled that a maritime lien can arise only by operation of law. The Eastern District of Virginia[] has similarly stated that "[w]hile a maritime lien does arise by operation of law rather than by agreement between the parties, there are a number of reasons for including contractual language alerting the parties to the existence of a lien on the ship" but that "[t]his language does not, however, actually give rise to the lien." In other words, even under U.S. law, Victory Shipping's alleged lien does not arise even where there is contractual language saying so.

Dkt. 26 at 3 (citations omitted). But all this does is reiterate that liens are a matter of law, not contract. It offers no analysis whatsoever regarding whether, by

4

operation of law, Victory Shipping's alleged maritime lien is valid under the law that Texcem contends applies. The fact that Texcem conceded at the hearing that Victory Shipping meets the requirements of Rules B and E, and that Texcem requests vacatur only on equitable grounds, seem like acknowledgements that Victory Shipping has a valid maritime lien under U.S. law.

For its part, Victory Shipping again concedes that if, as it maintains, the charter party is valid and English law applies, "it would likely not have a maritime lien over the [C]argo *in rem* as a result of the breach of the charter party" because English law does not recognize a maritime lien arising from breach of a charter party. Dkt. 27 at 3–4. But for Texcem's contention that the charter party is invalid— which, if true, would mean that English law does not apply—Victory Shipping's admission would definitively dispose of the issue and require vacating the attachment, notwithstanding Victory Shipping's misplaced arguments about its right to security under English law.[2] What a curious predicament—the party seeking vacatur has adopted a position that seemingly *supports* probable cause for the attachment by contending that the charter party is invalid, while the party seeking attachment has candidly admitted, by implication, that probable cause does not exist if the charter party is valid.

For all the reasons that Victory Shipping articulates in its Brief in Support of Attachment and Arrest, the charter party's validity does not seem questionable. *See* Dkt. 22 at 13–14. Texcem concedes that it "did in fact have a business relationship

---

[2] Victory Shipping argues that even absent a valid maritime lien, "under English law, Victory Shipping is still entitled to obtain security for its . . . claim." Dkt. 27 at 2. In support of this argument, Victory Shipping cites cases demonstrating that "[u]nder English law, the general rule is that exclusive jurisdiction clauses will not preclude ancillary relief in other jurisdictions . . . unless there is an express contractual provision to that effect." *Id.* at 4 (collecting American and English cases). That English law does not preclude ancillary relief, however, does not transform an otherwise deficient attachment under Rules B and E. As discussed above, Victory Shipping acknowledges that it does not have a valid maritime lien under the law that it claims governs this dispute—English law. Thus, but for Texcem's contention that the charter party is invalid, Victory Shipping would fail to satisfy its burden under Rule E(4)(f).

5

with [Victory Shipping]"; that they "discussed a voyage charter"; and that Texcem paid Victory Shipping for delivery of the Cargo. Dkt. 21 at 3. The only reason Texcem gives for why the charter party is *not* valid is the absence of a written agreement. Yet this contention ignores that "binding chartering engagements have historically been assumed on nothing more formal than the nod of a head." *Great Circle Lines, Ltd. v. Matheson & Co., Ltd.*, 681 F.2d 121, 124 (2d Cir. 1982). To the extent Texcem argues that "the terms . . . w[ere] never fully accepted," Dkt. 21 at 3, that argument overlooks that where there is no agreement regarding details, "the terms of the printed form govern." *Great Circle Lines*, 681 F.2d at 125. Here, the printed form provides that all disputes that cannot be solved amicably will "be settled in London in accordance with the English law." Dkt. 1-1 at 8 (adjusted capitalization). Texcem does not argue that it did not receive or know of the terms of this printed form. Thus, it seems probable that the charter party is valid, that English law applies, and that Victory Shipping does *not* have a valid maritime lien.

At the end of the day, Texcem's self-defeating position regarding the validity of the charter party—and by implication, the validity of Victory Shipping's alleged maritime lien—is irrelevant. I do not have to decide the validity of the charter party at this juncture. I simply have to ask whether Victory Shipping has carried its "burden of showing probable cause for the arrest." *Amstar Corp. v. S/S ALEXANDROS T.*, 664 F.2d 904, 912 (4th Cir. 1981). It has not. Victory Shipping initiated this action under the Federal Arbitration Act to compel Texcem to arbitrate in London, under English law. Given the basis of Victory Shipping's complaint and the parties' agreement that English law would not recognize a claim for breach of a charter party, Victory Shipping cannot carry its Rule E(4)(f) burden.

Even if Victory Shipping could carry its burden, I would still vacate the attachment on equitable grounds, notwithstanding that Victory Shipping commenced this action pursuant to the Federal Arbitration Act. It is generally accepted that a district court may use its equitable powers to vacate an attachment if "1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the

6

plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." *Aqua Stoli*, 460 F.3d at 445. The test is disjunctive, and the parties agree that the conditions of only the first prong are at issue. It is undisputed that Texcem is subject to suit in the Northern District of Texas, which is a convenient adjacent jurisdiction.

Victory Shipping argues that the equities tip in its favor, despite Texcem's availability in the Northern District of Texas. Victory Shipping contends that, without the attachment, Victory Shipping must "chase Texcem after the fact . . . rendering any award a mere pyrrhic victory." Dkt. 22 at 10. Yet the cases Victory Shipping cites in support of this argument involved insolvent companies, or companies on the verge of collapse. Here, the only facts that Victory Shipping offers to suggest that Texcem might not satisfy an arbitral award are its relative youth—it has been in business for roughly a year—and the fact that the parties did not commercially resolve their disputes in under a month's time. This is not enough, especially given that the value of the Cargo alone far exceeds—doubles, nearly—the amount at issue in this dispute. Accordingly, I cannot say that the equities tip in Victory Shipping's favor.

Victory Shipping seems to argue that the Federal Arbitration Act entitles it to security in aid of arbitration. *See* Dkt. 27 at 9 ("9 U.S.C. § 8 provides a mechanism for a party like Victory Shipping to obtain security in aid of arbitration."). But the Federal Arbitration Act states that the aggrieved party "may begin his proceeding hereunder by libel and seizure of the vessel . . . according to the usual course of admiralty proceedings." 9 U.S.C. § 8. As discussed above, under the "usual course of admiralty proceedings," Victory Shipping does not have a valid maritime lien that can sustain a Rule B attachment.

Victory Shipping also argues that equitable vacatur is against public policy in an action commenced under the Federal Arbitration Act. It points out that the Northern District of Texas "does not have jurisdiction to adjudicate the merits of

7

claims subject to London arbitration," and equitable vacatur would be inappropriate in light of "the strong federal policy favoring arbitration." Dkt. 27 at 18. I am sensitive to the strong medicine that is arbitration. But this argument overlooks that while the Northern District of Texas may lack jurisdiction to adjudicate the *merits* of Victory Shipping's claims, it does not lack jurisdiction to issue "an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Accordingly, equitable vacatur would be appropriate even if Victory Shipping could show probable cause for a valid maritime lien. Finally, Victory Shipping need not travel to the Northern District of Texas to find Texcem, because in its supplemental briefing, Texcem expressly consents to this Court's jurisdiction and states that "this Court may direct the parties to proceed to arbitration." Dkt. 26 at 9.

## CONCLUSION

For all these reasons, Texcem's Motion for Vacatur (*see* Dkt. 21) is **GRANTED**. The October 27, 2022 order authorizing attachment is **VACATED**.

SIGNED this 21st day of November 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE