United States District Court
Southern District of Texas
**ENTERED**
December 16, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VICTORY SHIPPING PTE. LTD., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:22-cv-03689 |
| | § | |
| 50,109 METRIC TONS OF CEMENT, *in rem*, et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

# ORDER AND OPINION

Pending before me is a motion filed by Plaintiff Victory Shipping Pte. Ltd. ("Victory Shipping") seeking reconsideration of my November 21, 2022 Order and Opinion (*see* Dkt. 28). *See* Dkt. 30.[1] Having considered the parties' briefing, oral arguments, the applicable law, and the record, I **GRANT** Victory Shipping's Motion for Reconsideration (*see* Dkt. 30); **VACATE** the Court's November 21, 2022 Order and Opinion (*see* Dkt. 28); and **DENY in part** and **GRANT in part** the Motion for Vacatur (*see* Dkt. 21) filed by Defendant Texcem LLC ("Texcem"). My analysis follows.

## BACKGROUND

On June 6, 2022, Victory Shipping and Texcem entered into a charter party for the shipment of 50,109 metric tons of cement ("the Cargo") from Karachi,

---

[1] The motion is styled as Victory Shipping Ptd. Ltd.'s Objections to the Order and Opinion, Motion for Reconsideration, and Motion for Stay Pending Reconsideration and/or Appeal. The Motion for Reconsideration is directed to me, *see* Dkt. 30-2, and "magistrate judges have the power to field motions for reconsideration of their prior rulings." *Rouviere v. DePuy Orthopaedics, Inc.*, 560 F. Supp. 3d 774, 786 n.3 (S.D.N.Y. 2021) (collecting cases). *Rouviere* addressed motions for reconsideration in the context of the Southern District of New York Local Rules, but the analysis is equally applicable in this district. *See Chase Manhattan Bank v. Iridium Afr. Corp.*, 294 F. Supp. 2d 634, 637 (D. Del. 2003) (The plaintiff cited "no case, and the Court has found none, that prevents a magistrate judge from reconsidering his or her own rulings.").

Pakistan, to Houston, Texas. Importantly, the charter party provides that any disputes are to be resolved amicably, or through arbitration in London under English law. Discharge of the Cargo in Houston was completed on October 3, 2022. Though the voyage from Karachi to Houston was uneventful, discharge of the cargo in Houston took 63 days instead of the six days warranted in the charter party. The delay resulted in $2,072,025.00 in demurrage.[2]

On October 25, 2022, Victory Shipping filed a Verified Complaint and moved pursuant to 9 U.S.C. § 8 ("Federal Arbitration Act"), and Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, to begin a proceeding against Texcem by attaching (under Rule B) and arresting (under Rule C) the Cargo as security against the $2,116,511.54 that Victory Shipping alleges is the value of this dispute. In addition to demurrage, this amount comprises $241,407.00 in port disbursement account charges, $50,397.78 in stevedore damage, $7,144.95 for the balance of freight, and $6,486.81 for Karachi PNI surveyor charges. The amount has been reduced by a $40,950.00 credit for Texcem loading the Cargo in less than the allotted time, and a $220,000.00 partial payment made during the protracted discharge.

I issued orders authorizing the Rule B attachment and the Rule C arrest on October 27, 2022. On November 4, 2022, Texcem moved pursuant to Rule E(4)(f) to vacate only the Rule B attachment. I held a Rule E(4)(f) hearing on November 8, 2022, after which I ordered the parties to submit supplemental briefing on the availability of equitable vacatur in an action commenced under § 8 of the Federal Arbitration Act. On November 21, 2022, I granted Texcem's motion, but the following day I stayed my order to afford Victory Shipping the opportunity to

---

[2] "Demurrage is a penalty imposed on a charterer of a vessel . . . for delays in loading or unloading the ship's cargo. The period of time permitted under the charter party for loading and unloading is known as 'laydays' or 'laytime.' After the agreed laydays have expired, the charterer . . . is liable for delay according to an agreed daily or hourly rate of liquidated damages known as demurrage." *Trans-Asiatic Oil Ltd., S.A. v. Apex Oil Co.*, 804 F.2d 773, 774 n.1 (1st Cir. 1986).

contest it. On November 23, 2022, Victory Shipping concurrently filed objections and a motion for reconsideration. Texcem responded, and I held a status conference with the parties on December 8, 2022.

## MOTION FOR RECONSIDERATION

Victory Shipping moves for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). "Rule 59(e) governs motions to alter or amend a final judgment; Rule 54(b) allows parties to seek reconsideration of interlocutory orders." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). The order granting vacatur was not a final judgment. Accordingly, I construe Victory Shipping's request for reconsideration under the Rule 54(b) standard. "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id*.

Victory Shipping puts forth three reasons supporting reconsideration: (1) that the "application of equitable vacatur in the context of 9 U.S.C. § 8 is wholly inappropriate, against Congressional intent, and frustrates international trade, and the use of Rule B attachments to obtain security"; (2) the balance of equities clearly favors Victory Shipping[3]; and (3) "Victory Shipping has established a prima facie maritime claim for the breach of the charter party under both English and United States law, and satisfied the probable cause standard under Rule E." Dkt. 30 at 7, 13, 16. Having reviewed the parties' briefing and applicable law once more, I agree with Victory Shipping as to its second and third points and grant its motion for reconsideration. I will now consider anew Texcem's Motion for Vacatur.

## MOTION FOR VACATUR

"Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to

---

[3] The November 21, 2022 Opinion and Order did not expressly address which party bears the burden for establishing equitable vacatur, which was an alternative basis for ruling. I grant Victory Shipping's Motion for Reconsideration, in part, to clarify this point and apply the burden accordingly.

3

show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." FED. R. CIV. P. SUPP. ADM. R. E(4)(f). A Rule B attachment is a *quasi in rem* proceeding that allows the court to assert jurisdiction over a defendant's property when that property, the *res*, is located with the district. *See Belcher Co. of Ala. v. M/V Maratha Mariner*, 724 F.2d 1161, 1163–64 (5th Cir. 1984). A Rule C arrest is an *in rem* action where the complaint is filed against the *res*. *See id.* at 1163. "Under the admiralty law of the United States, *in personam* and *in rem* actions may arise from the same claim, and may be brought separately or in the same suit." *Id.*

### A.   RULE C ARREST

In its initial motion, Texcem expressly moved to vacate only the Rule B attachment. This is procedurally problematic because liens supersede attachments. *See, e.g.*, *Heidmar, Inc. v Anomina Ravennate Di Armamento Sp.A. of Ravenna*, 132 F.3d 264, 266 (5th Cir. 1998) (converting a Rule C arrest into a Rule B attachment after it was shown that the plaintiff did not have a valid maritime lien under English law). In other words, it would make no difference if I vacated the attachment if the arrest were still in place. However, while appearing before me on December 8, 2022, Texcem orally moved to vacate the arrest. Texcem also submitted a letter stating why the arrest should be vacated. *See* Dkt. 38. The parties are now in agreement that English law applies to this dispute and that Victory Shipping does not have a valid maritime lien for demurrage that would support a Rule C arrest. *See, e.g.*, *Bominflot, Inc. v. The M/V HENRICH S*, 465 F.3d 144, 147 (4th Cir. 2006) (discussing how "most nations—including England— limit or preclude [maritime lien] application" in contrast to U.S. law, and discussing the choice of law analysis for determining the validity of a maritime lien). Accordingly, the Rule C arrest should be vacated.

### B.   RULE B ATTACHMENT

Texcem has always conceded that Victory Shipping meets the requirements for a Rule B attachment. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*,

4

460 F.3d 434, 445 (2d Cir. 2006) ("[A]n attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment."), *abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). Rather, Texcem asks that I apply the equitable vacatur doctrine announced in *Aqua Stoli* and vacate the attachment.[4] Under this doctrine, there are three circumstances in which a court, using its equitable powers, "may vacate the attachment": (1) when the defendant "would be subject to *in personam* jurisdiction in an adjacent district"; (2) the defendant is "located and subject to personal jurisdiction in the same district as [the plaintiff]"; or (3) the plaintiff has already obtained sufficient security. *Aqua Stoli*, 460 F.3d at 447. It is the defendant who bears the burden "to establish any equitable grounds for vacatur." *Id.* at 445 n.5. "Notably, equitable vacatur is not required even if the defendant shows at a Rule E hearing that one of the limited grounds for equitable vacatur is present; rather, the court in its discretion must still determine whether equity weighs in favor of vacating the attachment." *Boland Marine*, 2020 WL 10051743, at *11.

Texcem argues the equities weigh in its favor because it "is easily located [in the Northern District of Texas], has never failed to respond to or meet with Plaintiff, and has demonstrated financial stability by . . . paying Plaintiff millions

---

[4] Whether a court has discretion to vacate an attachment under 9 U.S.C. § 8 is an unsettled area of law. To begin with, "neither the Supreme Court nor the Fifth Circuit have affirmed or defined the district court's equitable vacatur power." *Boland Marine & Indus., LLC v. Bouchard Transp. Co.*, No. 1:20-CV-66, 2020 WL 10051743, at *10 (W.D. Tex. Feb. 28, 2020). Moreover, the Fifth Circuit "has yet to address the question of whether a district court retains some measure of discretion under § 8." *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 677 n.4 (5th Cir. 1999). The Fifth Circuit has acknowledged that § 8 "does not appear to afford the district court discretion to dismiss when the case is referred to arbitration" but has yet to take a "definitive position" on the scope of the district court's discretion. *Id.* This is not an issue I must decide today, however, because I find that the equities weigh in Victory Shipping's favor.

of dollars, including excess payments over and above the full freight charges." Dkt. 21 at 6. This argument centers on the fact that Texcem is a brick-and-mortar business in Dallas over which Victory Shipping could easily obtain *in personam* jurisdiction in the Northern District of Texas. Texcem also highlights that the cement "is in high demand" and that Texcem has already "had to rebuff [a] customer's request." *Id.* at 11. Accordingly, Texcem contends that the attachment "hinders [its] ability to generate revenue" and "serves no purpose other than to negatively impact [its] financial health, destroy customer relations, risk market downturn, and force [it] to pay disputed amounts, such that the merits are never appropriately examined." *Id.*

In support of its argument regarding the negative impact of attachment, Texcem cites Judge Tallman's concurrence in *ProShipLine Inc. v. Aspen Infrastructures Ltd.* for the proposition that "maritime attachments are being employed . . . for the vexatious purpose of harassing defendant in order to gain a tactical advantage in the pending commercial disputes." Dkt. 21 at 11 n.48 (quoting 609 F.3d 960, 975 (9th Cir. 2010) (Tallman, J., concurring)). The facts of *ProShipLine* involve a prolonged, three-way dispute between a contract carrier, a consulting firm, and an Indian enterprise that yielded "extensive litigation in Texas, New York and Washington," during which the parties took turns seeking maritime attachments against one another in various jurisdictions. *ProShipLine*, 609 F.3d at 964. The facts of *ProShipLine* stand in stark contrast to this relatively straightforward dispute between Victory Shipping and Texcem, and Victory Shipping's filings thus far are part and parcel of routine admiralty procedure. Moreover, in contrast to Judge Tallman's concurrence, the Fifth Circuit has expressly reaffirmed that assuring satisfaction of a potential judgment remains a purpose of Rule B. *See Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 244 (5th Cir. 2016) ("The rule has two purposes: to secure a respondent's appearance and to assure satisfaction in case the suit is successful." (cleaned up)); *see also Boland Marine*, 2020 WL 10051743, at *11

6

("[C]ourts have . . . held that the spirit of Rule B is not violated when a party's primary interest in seeking the attachment is obtaining security to satisfy a judgment, rather than simply obtaining *in personam* jurisdiction." (cleaned up)). Accordingly, it is neither improper, nor is it a violation of either the letter or the spirit of the Supplemental Admiralty Rules, for Victory Shipping to seek attachment as security for its valid maritime claim.

I acknowledge and respect Texcem's observation that "[i]n no other context can a plaintiff indefinitely disrupt a defendant's business by having the Court secure assets sufficient to satisfy a potential judgment." Dkt. 35 at 4. But admiralty law is not just any other context. Rather, admiralty "is the oldest branch of our modern American system of law" and "is not any part of the domestic or common law but is separate and international in character." 29 Moore's Federal Practice - Civil § 701.01 (2022). It is for this reason that admiralty matters must be specially pleaded. *See* FED. R. CIV. P. 9(h). The "centuries-old maritime case law" (Dkt. 35 at 2) that underpins "traditional admiralty procedure with its concomitant security" is the backdrop against which the worldwide maritime industry operates and upon which it relies. *The Anaconda v. Am. Sugar Refin. Co.*, 322 U.S. 42, 46 (1944); *see also* 29 Moore's Federal Practice - Civil § 701.01 (2022) ("Admiralty, one of the most effective tools of international law, is in use worldwide on a daily basis."). Accordingly, the fact that Victory Shipping has elected to pursue this ancient entitlement is not a factor to be weighed in Texcem's favor. It follows then that, while Victory Shipping's ability to reach Texcem in the Northern District of Texas is an important equitable factor, it is one that must be weighed against Victory Shipping's right to concomitant security.

I am not unsympathetic to Texcem's arguments. But the evidence that Victory Shipping has submitted with its complaint indicates a carelessness on Texcem's part for its obligations. The Port Log for the discharge shows that, despite the extraordinary delay, Texcem never arranged for night gangs that would have expedited discharging the Cargo. *See* Dkt. 1-5. Texcem argues that "despite

7

ongoing discussions backed by a substantial ($220,000.00) good faith payment, [Victory Shipping] initiated the attachment proceedings at bar." Dkt. 21 at 2. But this argument rings hollow after considering the accounting submitted by Victory Shipping that shows this "good faith" payment was made on September 23, 2022, *while the Cargo was still being discharged*. Dkt. 1-7 at 2. There do not appear to have been any other acts of good faith since the Cargo was discharged more than two months ago. Texcem makes much of the fact that it is a land-based Texas corporation and not a ship that can flee in the night to parts unknown. This argument is oversold—it overlooks the rapidity with which individuals can dissolve corporations and flee on ships (or planes) themselves in the night. That is not to say that I think Texcem is likely to do such a thing. Rather, it is only to highlight how little yardage is gained by such an argument. Indeed, Texcem has told me nothing about its solvency or stability, despite the fact that it bears the burden to establish that equitable vacatur is warranted.[5] Texcem also makes much of the fact that the value of the cement is greater than the value of Victory Shipping's claims. I assume that is true, but even so, "[e]quitable vacatur is not appropriately applied just because the value of [the *res*] vastly exceeds the fairly stated value of the plaintiff's claim; if it were, only an enormous indebtedness could sustain the attachment of a defendant's property." *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, No. CIV.A. G-12-304, 2013 WL 126534, at *3 (S.D. Tex. Jan. 9, 2013) (holding that the attachment of a "$20,000,000.00 vessel for a mere $230,000.00 debt" was not inequitable). Absent something more, this is just an argument for reducing the security, not for vacating the attachment altogether.

Lastly, I must address the weight that Texcem places on my decision in *Knox v. Hornbeck Offshore Servs., LLC*, No. 3:19-CV-00181, 2019 WL 3202296 (S.D. Tex. July 16, 2019), a case in which I granted equitable vacatur. When I granted

---

[5] The argument that Texcem is obviously able to satisfy a potential award because it paid for the Cargo also fails to move the ball. As Victory Shipping points out, "[i]f Texcem had failed to pay freight, the Cargo would never have been discharged, and Victory Shipping would not be in this current predicament." Dkt. 30 at 14.

equitable vacatur in *Knox*, both the first *and* second prongs of *Aqua Stoli*'s equitable vacatur test were satisfied, *and* the parties were already engaged in litigation in the district where they were both located. The plaintiff in *Knox* had already dismissed one improperly filed suit against the defendant. And in attaching the defendant's property, the plaintiff neglected to mention that the defendant had already filed a declaratory judgment action in the district where both the plaintiff and defendant were located. That the plaintiff sought to attach the defendant's property after the defendant had already instituted an action on the merits in the district where both the plaintiff and the defendant were located distinguishes *Knox* from this case.

In sum, equitable vacatur is not some bright-line workaround to longstanding admiralty procedures. It is Texcem's burden to establish that equitable vacatur is warranted, and that burden has not been carried here.

## CONCLUSION

For the reasons stated above, I **GRANT** Victory Shipping's Motion for Reconsideration. *See* Dkt. 30. Accordingly, this Court's November 21, 2022 Order and Opinion is **VACATED**. *See* Dkt. 28. On reconsideration, I **DENY in part** and **GRANT in part** Texcem's Motion for Vacatur. *See* Dkts. 21, 38. Texcem's motion to vacate the Rule B attachment on equitable grounds (*see* Dkt. 21) is **DENIED**, and this Court's October 27, 2022 order authorizing attachment (*see* Dkt. 10) is **REINSTATED**. Texcem's motion to vacate the Rule C arrest (*see* Dkt. 21) is **GRANTED**, and this Court's October 27, 2022 order authorizing seizure (*see* Dkt. 11) is **VACATED**.

SIGNED this 16th day of December 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE